J-S24039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON JOHN DAVIS | : | |
| | : | |
| Appellant | : | No. 39 WDA 2021 |

Appeal from the PCRA Order Entered December 1, 2020
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0000345-2009,
CP-63-CR-0000346-2009, CP-63-CR-0000347-2009,
CP-63-CR-0000348-2009, CP-63-CR-0000349-2009,
CP-63-CR-0000350-2009, CP-63-CR-0000351-2009

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: AUGUST 13, 2021**

Appellant, Jason John Davis, appeals from the December 1, 2020, order entered in the Court of Common Pleas of Washington County dismissing his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without an evidentiary hearing.  After a careful review, we affirm.

The relevant facts and procedural history are as follows: After Appellant's arrest in connection with a string of burglaries occurring in the Nottingham Township area from November 6, 2008, to December 22, 2008, Appellant was charged with various offenses at seven separate lower court docket numbers.  The trial court consolidated the cases, and on August 13,

_____

* Former Justice specially assigned to the Superior Court.

2008, Appellant, who was represented by counsel, proceeded to a bench trial before the former judge Paul Pozonsky.[1] The trial court summarized the evidence presented at Appellant's bench trial as follows:[2]

> At trial, the evidence revealed that, from November 6, 2008, to December 22, 2008, numerous home burglaries were reported in the Nottingham Township area. Seven victims testified that items were taken from their home during the daytime hours while they were out of the home.
>
> One of the victims was Thomas Jerko, whose home was burglarized [on] November 14, 2008. Mr. Jerko and his wife came home and, as they pulled onto their street, they noticed a Lincoln Continental parked across the street. When they got into their home, the Jerkos discovered that they had been robbed. Mr. Jerko immediately went outside, but the Lincoln was already gone. Mr. Jerko told [the] police that there was a small man or woman sitting in the car, and that he would be able to identify the car if he saw it again.
>
> In December 2008, Trooper David Vanderaar ("Tpr. Vanderaar") became aware of several daytime burglaries, which had occurred in the Nottingham Township area. Tpr. Vanderaar then met with [the] police from Nottingham and the surrounding jurisdictions to discuss these burglaries. After looking at various reports, the police connected several reports that had multiple things in common, such as the time of day when the crimes were committed and what items were stolen. These cases all occurred during the day and involved stolen handguns, [as well as] jewelry.
>
> On December 29, 2008, a Lincoln Continental similar to the one described by Mr. Jerko was seen in the Nottingham area. Police made contact with the vehicle and asked the two occupants

---

[1] As discussed *infra*, the judge who presided over Appellant's bench trial retired in 2012, and he subsequently entered guilty pleas to criminal charges stemming from his theft of narcotics from evidence packs. After the litigation of Appellant's first PCRA petition, the judge was disbarred from the practice of law in this Commonwealth.

[2] On direct appeal, this Court specifically adopted the trial court's summary of the evidence presented at trial. *See Commonwealth v. Davis*, No. 2091 WDA 2009, at *1 (Pa.Super. filed 12/16/11) (unpublished memorandum).

to come to the police barracks.  The occupants were Jesika Gray and [Appellant].  Mr. Jerko then came to the [police] station and positively identified the Lincoln as the car he had seen outside of his home.

[After] Mr. Jerko identified the car, Tpr. Vanderaar interviewed Jesika Gray.  Ms. Gray changed her story a number of times during the interview.  When Tpr. Vanderaar confronted her with the inconsistencies in her statement, she said that she would cooperate with the investigation, at which time she was read her *Miranda*[3] rights.

At trial, Tpr. Vanderaar testified at length to the statements that Ms. Gray gave to him….His testimony was then corroborated by Ms. Gray, who testified later that day.

Ms. Gray explained that there was a set plan to the burglaries.  Ms. Gray and [Appellant] would drive around during the day [while] people [were] at work.  Then the pair followed a similar pattern at each home:

> MS. GRAY: He would pull up to a house.  I would get out, knock to see if one of the residents was home, get back to the car, and tell him if they were home or not.
>
> [DISTRICT ATTORNEY]: That happened with the first incident?
>
> MS. GRAY: It happened with every incident.

The next day, Ms. Gray went with Tpr. Vanderaar on a ride-along to point out various homes that were robbed. Tpr. Vanderaar drove, and Ms. Gray directed him to various homes.  To test her veracity, Tpr. Vanderaar would occasionally stop in front of a random home and ask if it was one of the homes she assisted [Appellant] in robbing, and she always denied that those homes were involved.  Throughout the day and after a second ride-along, Ms. Gray identified nine homes that she robbed with [Appellant].  She was able to recall what was taken from four of the homes.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

Trial Court Opinion, filed 7/8/11, at 1-3 (citations to record omitted) (footnote added).

At the conclusion of all testimony, the trial court convicted Appellant of nine counts each of burglary, conspiracy (burglary), criminal trespass, theft, and receiving stolen property, four counts of conspiracy (theft), and one count of criminal mischief.[4] On October 28, 2009, the trial court sentenced Appellant to consecutive prison terms of three years to six years for each burglary conviction, and consecutive three-year terms of probation for each conspiracy conviction. Appellant's sentence resulted in an aggregate term of twenty-seven years to fifty-four years in prison to be followed by twenty-seven years of probation.

Appellant filed a timely, counseled direct appeal. On appeal, he challenged the sufficiency and weight of the evidence. *See Davis*, *supra*. He also averred the trial court abused its discretion in permitting hearsay testimony from Ms. Gray and in imposing an excessive sentence. *Id.* This Court found all claims to be meritless and/or waived.[5] *Id.* Thus, we affirmed Appellant's judgment of sentence. Appellant filed a petition for allowance of

___

[4] *See* 18 Pa.C.S.A. §§ 3502, 903, 3503, 3921, 3925, 3921, and 3304, respectively. The trial court nol prossed two burglary charges at lower court number CP-63-CR-0000347-2009.

[5] Appellant also presented an ineffective assistance of counsel claim, which we deferred without prejudice to Appellant's right to raise the issue in a PCRA petition.

appeal, which our Supreme Court denied on April 17, 2012. Appellant did not file a petition for writ of *certiorari* with the United States Supreme Court.

On May 31, 2012, Appellant filed a timely *pro se* PCRA petition, counsel was appointed to represent Appellant, and counsel filed a petition to withdraw, along with a **Turner/Finley**[6] no-merit letter. The PCRA court granted counsel's petition to withdraw and gave Appellant thirty days to amend his PCRA petition. In August of 2013, Appellant filed a supplemental *pro se* PCRA petition.

On April 17, 2014, the PCRA court filed notice of its intent to dismiss the petition without an evidentiary hearing, and on June 10, 2014, the PCRA court dismissed Appellant's PCRA petition. Appellant did not timely appeal; however, he filed a motion to reinstate his appeal rights *nunc pro tunc*, averring that he had not received the PCRA court's dismissal order. Appellant attached a copy of his legal mail registry from State Correctional Institution-Frackville, and the order was not listed as received. Thereafter, the PCRA court granted Appellant's request and reinstated his appeal rights. Appellant then filed a notice of appeal to this Court.

On appeal, Appellant presented numerous claims, including that, since he was unaware that his trial judge was engaged in criminal activity or under the influence of a controlled substance at the time he sat for Appellant's trial,

---

[6] **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988).

Appellant was denied his constitutional right to a trial before a fair and impartial tribunal, as well as failed to enter a knowing waiver of his right to a jury trial.

In an unpublished memorandum, this Court found all of Appellant's issues to be meritless, waived, or previously litigated. *See Commonwealth v. Davis*, No. 985 WDA 2016 (Pa.Super. filed 5/5/17) (unpublished memorandum). Specifically, as it pertains to Appellant's issues related to former judge Pozonsky, we held the following:

> Appellant contends…that he could not have entered a knowing and intelligent waiver of his right to a jury trial because he did not know the trial judge was engaging in criminal activity and under the influence of illegal narcotics while presiding over Appellant's trial. Here, Appellant was tried and sentenced years before the allegations of wrongdoing against the trial judge surfaced and prior to a criminal investigation of the judge. *See Commonwealth v. Dozier*, 99 A.3d 106, 111-13 (Pa.Super. 2014) (requiring a nexus between presiding judge's alleged criminal activity and a defendant's proceedings). We agree with the sound reasoning of the PCRA court:
>
> > Appellant's trial judge pled guilty to theft by unlawful taking, obstruction of the administration of law and misappropriation of entrusted property. The [Appellant] makes no allegation of a nexus between [the judge's] illegal activity and the case at bar. No allegation was made that [the trial judge] would have an interest in the outcome of this case. In the [criminal] prosecution of [the trial judge], there was no allegation or inference that he was under the influence of drugs while he was presiding as a judge in any case. Without any nexus between the judge's conduct and this case, [Appellant's] claim fails.
>
> PCRA Court Opinion, 10/11/2016, at 7-8.
>
> In light of our disposition of Appellant's issue, we need not reach the merits of his [remaining] issue, which is also predicated

on the allegation of the trial judge stealing and using narcotics while conducting Appellant's trial….No relief is due to Appellant.

*Davis*, No. 985 WDA 2016, at *8-9 (citations to briefs omitted).

Thus, we affirmed the PCRA court's order dismissing Appellant's first PCRA petition. Appellant filed a petition for allowance of appeal, which our Supreme Court denied on November 28, 2017.

On January 17, 2019, Appellant filed a *pro se* PCRA petition,[7] and the PCRA court appointed counsel to represent Appellant. PCRA counsel filed a petition to withdraw, along with a ***Turner/Finley*** no-merit letter. On August 21, 2020, the PCRA court granted counsel's petition to withdraw and provided Appellant with notice of its intent to dismiss the PCRA petition without an evidentiary hearing. By order entered on December 1, 2020, the PCRA court dismissed Appellant's PCRA petition, and this timely appeal followed on December 27, 2020.[8, 9]

_____

[7] Although this *pro se* document was time-stamped January 23, 2019, we shall deem it to have been filed on January 17, 2019, when it was handed to prison authorities. ***See Commonwealth v. Wilson***, 911 A.2d 942, 944 (Pa.Super. 2006) (holding under the prison mailbox rule a *pro se* document is deemed filed on the date a prisoner deposits the document with the proper prison authority).

[8] Although this *pro se* document was time-stamped January 4, 2021, we shall deem it to have been filed on December 27, 2020, when it was handed to prison authorities. ***See Wilson***, ***supra***.

[9] We note that, in contravention of our Supreme Court's decision in ***Commonwealth v. Walker***, 646 Pa. 456, 185 A.3d 969 (2018), Appellant
*(Footnote Continued Next Page)*

- 7 -

On appeal, Appellant sets forth the following issue in his "Statement of Questions Involved" (verbatim):

I. Did the PCRA court err by dismissing the PCRA petition based on a purported failure to prove prejudice relating to judicial misconduct?

Appellant's Brief at 4 (unnecessary capitalization omitted).

Initially, we note the following:

On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

*Commonwealth v. Nero*, 58 A.3d 802, 805 (Pa.Super. 2012) (quotation marks and quotations omitted).

Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. The most recent amendments to the PCRA, effective January 16, 1996, provide a PCRA petition, including a second or subsequent petition, shall be filed within one

_____

filed a single notice of appeal listing the seven lower court docket numbers captioned above. However, our review reveals that, in its December 2, 2020, dismissal order, the PCRA court informed Appellant he had "the right to file an appeal[.]" PCRA Order, filed 12/2/20. Accordingly, due to this breakdown in the PCRA court's operations, we excuse Appellant's non-compliance with *Walker*. *See Commonwealth v. Larkin*, 235 A.3d 350 (Pa.Super. 2020) (*en banc*) (declining to quash a defective notice of appeal when the defect resulted from an appellant's acting in accordance with misinformation from the trial court, deeming the situation a breakdown in court operations); *Commonwealth v. Stansbury*, 219 A.3d 157, 160 (Pa.Super. 2019) (holding there was a breakdown in the PCRA court's operations when the appellant was informed he could file "a notice of appeal" from an order disposing of multiple cases).

year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

***Commonwealth v. Monaco***, 996 A.2d 1076, 1079 (Pa.Super. 2010)

(citations omitted).

[There are] three statutory exceptions to the timeliness provisions in the PCRA [that] allow for the very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petitioner must allege and prove:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

***Id.*** at 1079-80 (citing 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii)).

Any petition invoking a timeliness exception must be filed within one year of the date the claim could have been presented.[10] 42 Pa.C.S.A. §

_____

[10] 42 Pa.C.S.A. § 9545(b)(2) previously provided that a petition invoking a timeliness exception was required to be filed within sixty days of the date the claim could first have been presented. However, effective December 24, 2018, the legislature amended Subsection 9545(b)(2) to read: "Any petition invoking an exception provided in paragraph (1) shall be filed within one year

*(Footnote Continued Next Page)*

9545(b)(2). "We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Marshall*, 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted).

Here, Appellant was sentenced on October 28, 2009, and this Court affirmed his judgment of sentence on December 16, 2011. Our Supreme Court denied Appellant's petition for allowance of appeal on April 17, 2012, and Appellant did not file a petition for a writ of *certiorari* with the United States Supreme Court. Accordingly, Appellant's judgment of sentence became final 90 days later, on or about July 17, 2012. *See* U.S. Supreme Court Rule 13 (effective January 1, 1990) (stating that a petition for writ of *certiorari* to review a judgment of sentence is deemed timely when it is filed within 90 days). Appellant filed the instant PCRA petition on January 17, 2019, and consequently, it is facially untimely.

However, this does not end our inquiry as Appellant seeks to invoke the "newly-discovered facts" exception set forth in Subsection 9545(b)(1)(ii).

> To establish the newly discovered fact timeliness exception in [Sub]section 9545(b)(1)(ii), a petitioner must demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take

---

of the date the claim could have been presented." *See* 42 Pa.C.S.A. § 9545(b)(2) (effective December 24, 2018). The amendment to Subsection 9545(b)(2) only applies to "claims arising on [December] 24, 2017, or thereafter." *See id.*, cmt. We shall assume, *arguendo*, the amended version of Subsection 9545(b)(2) is applicable to the instant matter.

- 10 -

reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015) (citations and quotation marks omitted).

With regard to his "newly-discovered facts" claim, Appellant alleges he recently discovered that his trial judge, former judge Paul Pozonsky, admitted he had been using cocaine recreationally since the 1980s. Specifically, Appellant avers:

Pozonsky revealed [during his disciplinary hearing that] "he had used cocaine recreationally since the 1980s, including during his prior service as a magisterial district judge and during his tenure on the bench of the Court of Common Pleas." *Office of Disciplinary Counsel v. Pozonsky*, [644 Pa. 537, 177 A.3d 830, 832 (2018)[11]]. The fact that Pozonsky's [drug use] spanned a period of over thirty years was unknown to Appellant. In fact, [the Superior] Court [in reviewing the order denying Appellant's

---

[11] In *Pozonsky*, *supra*, our Supreme Court set forth in detail the circumstances of former judge Pozonsky's criminal activities and the reasons for his disbarment. Relevantly, from late October to early November 2010, and continuing through January 2012, which was well after Appellant's trial and sentencing, Pozonsky exploited his position as a judge to steal powdered cocaine, which was the principal evidence in criminal and delinquency hearings. *Id.* His theft of the illegal controlled substance was discovered in early 2012, and on March 20, 2015, he pled guilty to various crimes. *Id.* Thereafter, on August 19, 2015, our Supreme Court suspended Pozonsky's law license, the Office of Disciplinary Counsel filed a petition for discipline, and on March 15, 2016, Pozonsky proceeded to a disciplinary hearing, following which the Hearing Committee recommended disbarment from the practice of law. *Id.* The Disciplinary Board agreed disbarment was the appropriate sanction, and on January 18, 2018, our Supreme Court ordered Pozonsky be disbarred from the practice of law in this Commonwealth. *Id.*

first PCRA petition] found there was no nexus between Pozonsky's wrongdoing and Appellant's trial proceedings stating: "[H]ere, Appellant was tried and sentenced years before the allegations of wrongdoing against the trial judge surfaced and prior to a criminal investigation of the judge." [**Commonwealth v. Davis**, No. 985 WDA 2016, *9 (Pa.Super. filed May 5, 2017) (unpublished memorandum) (citation omitted)]. The fact Pozonsky <u>was</u> engaging in [illegal drug use] during Appellant's trial was unknown to everyone, including [the Superior] Court. It was not until the former judge confessed to the Disciplinary Board he had been using cocaine since the 1980s that [the] fact became known.

Of course, no amount of diligence could have unearthed the factual predicate before Pozonsky himself revealed it. By its very nature, the former jurist was able to keep his secrets hidden for over thirty years.

Appellant's Brief at 9-10 (footnote added) (underline in original).

Essentially, Appellant contends that former judge Pozonsky's admission to the Disciplinary Board, as revealed by the Supreme Court in its Opinion, that "he had used cocaine recreationally since the 1980s, including during his prior service as a magisterial district judge and during his tenure on the bench of the Court of Common Pleas," **Pozonsky**, **supra**, 177 A.3d at 834, is a newly-discovered fact, which Appellant could not have discovered sooner with the exercise of due diligence.

Assuming, *arguendo*, Appellant has met the initial one-year threshold, as well as the newly-discovered facts timeliness exception with regard to former judge Pozonsky's admission, we conclude Appellant has not met the requirements for the four-part after-discovered evidence test.

Once a petitioner has established the newly-discovered fact exception, he must satisfy the four-part test for after-discovered evidence. Specifically, he must establish that the evidence

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Pagan***, 597 Pa. 69, 950 A.2d 270, 292 (2008) (citation omitted). Our Supreme Court has noted that each of these elements, "if unproven by the petitioner, is fatal to the request for a new trial." ***Commonwealth v. Small***, 647 Pa. 423, 189 A.3d 961, 972 (2018).

Initially, with regard to the admission Pozonsky made during his testimony at the disciplinary hearing, upon which Appellant now relies, we note that our Supreme Court relevantly summarized Pozonsky's testimony as follows:

> Pozonsky testified on his own behalf and recounted the details of his legal career, during which he was never subject to disciplinary proceedings. He acknowledged that he had used cocaine recreationally since the 1980s, including during his prior service as a magisterial district judge and during his tenure on the bench of the Court of Common Pleas, **but he denied that he ever took the bench or adjudicated cases while under the influence of cocaine.**

***Pozonsky***, ***supra***, 177 A.3d at 834 (bold added).

We conclude that neither former judge Pozonsky's testimony nor our Supreme Court's lengthy opinion ordering disbarment supports the premise that Pozonsky was under the influence of a controlled substance while

- 13 -

performing his courtroom duties, including during Appellant's trial. *See Commonwealth v. Urwin*, 219 A.3d 167 (Pa.Super. 2019) (holding the appellant's proposition that Pozonsky was under the influence of cocaine during the appellant's trial is a premise unsupported by the Supreme Court's opinion in *Pozonsky*, *supra*).

In fact, our Supreme Court's opinion ordering Pozonsky's disbarment emphasized that Pozonsky did not have an uncontrollable addiction. *Pozonsky*, *supra*, 177 A.3d at 846. "Rather, the Court dismissed any characterization of Pozonsky's criminal acts as driven by addiction given that he 'presented *no* expert testimony to the Disciplinary Board establishing that he had an addiction to cocaine, or any other psychiatric disorder, which caused him to engage in his thefts and personal use of drug evidence.'" *Urwin*, 219 A.3d at 171 (quoting *Pozonsky*, *supra*, 177 A.2d at 845) (italics in original).

Aside from pointing to former judge Pozonsky's admission about his former recreational cocaine use, as set forth in our Supreme Court's opinion, Appellant has proffered no other evidence. Appellant's suggestion that Pozonsky was intoxicated during Appellant's trial is speculative, at best. *Id.* Therefore, since he has failed to demonstrate that his proffered evidence would likely result in a different verdict if a new trial were granted, Appellant is not entitled to relief. *Pagan*, *supra*.

For all of the foregoing reasons, we affirm.

Affirmed.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/13/2021</u>